**Not for Publication**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ERIC WILLIAMS, | |
| Plaintiff, | Civil Action No. 18-17321 (ES) |
| v. | MEMORANDUM OPINION |
| PATRICK NOGAN, *et al.*, | |
| Defendants. | |

**SALAS, DISTRICT JUDGE**

It appearing that

1. On December 18, 2018, Defendants Joseph Santiago, James Jones, and Patrick Nogan (collectively, "Defendants") removed this matter from New Jersey Superior Court. (D.E. No. 1). Plaintiff Eric Williams ("Plaintiff") had previously filed the complaint raising claims that Defendants improperly required Plaintiff to undergo a drug test; faked a positive result; and removed Plaintiff from his prison job, in violation 42 U.S.C. § 1983. (D.E. No. 1-1).

2. After removing the case, Defendants filed a Motion to Dismiss. (D.E. No. 5). In response, Plaintiff filed an Amended Complaint. (D.E. No. 6, Amended Complaint ("Am. Compl.")).

3. In the Amended Complaint, Plaintiff alleges that on September 13, 2017, while on his way to work in the prison kitchen, Defendant Santiago gave Plaintiff and 26 other inmates a "random hand scan." (Am. Compl. ¶ 1). He indicated that Plaintiff tested positive for an illegal substance. (*Id.* ¶ 2). The hand scan tested positive for all 26 inmates, and they were taken to "the hole" for urine testing. (*Id.* ¶ 3). Plaintiff's urine test was negative. (*Id.*). Plaintiff never received

a charge, nor was he given a hearing. (*Id.* ¶ 4). Nevertheless, Plaintiff lost his job and was sent to a different wing. (*Id.*). Upon request, several of the other inmates who also had a positive hand scan but negative urine test, got their jobs back. (*Id.* ¶ 5). Plaintiff requested to get his job back from Major Jones, who informed him he was "beat." (*Id.* ¶ 6). Defendant Nogan likewise denied his request to get his job back. (*Id.* ¶ 8). After the incident with Plaintiff and the 26 other inmates, the prison realized the hand scan was faulty, and they discontinued the practice of removing prisoners from their jobs following a positive hand scan. (*Id.* ¶ 11).

4. Plaintiff raises a Fourteenth Amendment due process claim for removing him from his job without notice and a hearing; a Fourteenth Amendment equal protection claim for giving the other similarly situated inmates their jobs back, while denying Plaintiff's request; and a Fourteenth Amendment due process claim for denying Plaintiff his "state liberty interest" in not losing his job. (Am. Compl. 4).

5. In response, Defendants filed the instant Motion to Dismiss, arguing that the official capacities claims against them must be dismissed because they are not "persons" under § 1983; the Fourteenth Amendment due process claims must be dismissed because there is no liberty or property interest in a prison job; his equal protection claim must be dismissed because he is not a member of a protected class; and Defendants are entitled to qualified immunity.[1] (D.E. No. 28, Defendant's Motion to Dismiss ("Mot.")).

---

[1] To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

"When reviewing a motion to dismiss, '[a]ll allegations in the complaint must be accepted as true, and the plaintiff must be given the benefit of every favorable inference to be drawn therefrom.'" *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). But the court is not required to accept as true "legal conclusions." *Iqbal*, 556 U.S. at 678. And "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

6. In his Opposition, Plaintiff concedes that the official capacity claims should be dismissed, and does not oppose the dismissal of the due process claims. (D.E. No. 11, Plaintiff's Opposition ("Opp.") at 1–2). However, he argues his equal protection claim should not be dismissed because he is not alleging that he is a member of a protected class, but rather that he was intentionally treated differently than other similarly situated prisoners with no rational basis for the difference in treatment. (*Id.*).

7. In light of Defendants' arguments, and Plaintiff's concessions, the Court will dismiss Plaintiff's official capacity claims and his Fourteenth Amendment due process claims. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) ("Obviously, state officials literally are persons[,] [b]ut a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office"); *Watson v. Sec'y Pennsylvania Dep't of Corr.*, 567 F. App'x 75, 78 (3d Cir. 2014) (citations omitted) (holding that a prison's refusal to reinstate an inmate to a prison job is not a due process violation); *Presbury v. Wenerowicz*, 472 F. App'x 100, 101 (3d Cir. 2012) (finding no deprivation of state-created liberty interest based on loss of prison job because the alleged deprivation does not impose "atypical and significant hardship ... in relation to the ordinary incidents of prison life") (citations omitted).

8. However, Defendants' Motion will be denied with regards to Plaintiff's equal protection claim. While Defendants are correct that Plaintiff does not allege membership in a protected class, they fail to address his equal protection claim under the "class of one" theory. *See Village of Willowbrook v. Olech*, 528 U.S. 562, 563 (2000) (holding that a plaintiff asserts a valid equal protection claim when he (i) is a member of a protected class and was treated differently from members of an unprotected class, or (ii) belongs to a "class of one" and was treated differently from others similarly situated without any rational basis for the difference in treatment); *Phillips*

3

*v. Cty. of Allegheny*, 515 F.3d 224, 243 (3d Cir. 2008) (same).

9. In his Amended Complaint, Plaintiff clearly states that several other inmates who also passed their "urines" were given their jobs back a few months later. (Am. Compl. ¶¶ 5, 8). He states that he was not given a reason for his job being taken away, while others got their back. (*Id.* ¶ 14). Finally, under "Causes of Action," he states that:

> [t]he actions of defendants Nogan, Jones and Santiago in giving other inmates their jobs back once they were cleared, as plaintiff was, by the urine test but refusing to give plaintiff his job back violated the equal protection clause in violation of the Fourteenth Amendment of the United States Constitution.

(Am. Compl. 4).

10. Because Defendants failed to address this claim in their Motion, both substantively and in their qualified immunity discussion, the Court will not dismiss the Amended Complaint in its entirety, as requested. However, as discussed above, all claims other than the equal protection class-of-one claim will be dismissed.

11. An appropriate order follows.

*s/Esther Salas*  
**Esther Salas, U.S.D.J.**