Not for Publication

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **ERIC WILLIAMS,** | |
| **Plaintiff,** | Civil Action No.: 18-17321 (ES) (CLW) |
| v. | **OPINION** |
| **PATRICK NOGAN,** *et al.*, | |
| **Defendants.** | |

**SALAS, DISTRICT JUDGE**

Plaintiff Eric Williams ("Plaintiff"), an inmate currently incarcerated at Mid-State Correctional Facility in Wrightstown, New Jersey, is proceeding *pro se* with an amended civil rights complaint against defendants Patrick Nogan ("Nogan"), James Jones ("Jones"), and Joseph Santiago ("Santiago") (together, "Defendants") pursuant to 42 U.S.C. § 1983. (D.E. No. 6 ("Amended Complaint" or "Am. Compl.")). Before the Court is Defendants' motion for summary judgment. (D.E. No. 60 ("Motion" or "Mot.") & D.E. No. 60-2 ("Mov. Br.")). As of the date of this Opinion, Plaintiff has not filed an opposition to Defendants' Motion, nor has Plaintiff otherwise responded to Defendants' Motion. Having considered Defendants' unopposed Motion and the record of this matter, the Court decides the Motion without oral argument (*see* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b)). For the reasons set forth below, and for good cause shown, the Court **GRANTS** Defendants' unopposed Motion for Summary Judgment.

I.  BACKGROUND

    A.  **Factual Background**[1]

Plaintiff was incarcerated at East Jersey State Prison ("EJSP") from December 2015 through June 2021. (SUMF ¶ 1). According to his Inmate Progress Notes Report, there was an outstanding federal "detainer[]/open charge[]" against Plaintiff related to controlled dangerous substances ("CDS"). (D.E. No. 60-5, Ex. A to Decl. of Counsel ("Inmate Progress Notes Rep."), at 005 (emphasis omitted)).

On August 29, 2017, Plaintiff began working in the inmate dining room, which is also known as "the kitchen detail." (SUMF ¶ 3). Plaintiff testified that, on September 13, 2017, he was called out of his cell to go to work at approximately 6:30 a.m., and he was brought into a room with approximately thirty-five to forty other inmates. (*Id.* ¶ 5). The inmates came from different wings in the facility and included kitchen detail workers as well as workers from other details, such as the trash detail. (*Id.* ¶¶ 6–7). Santiago and other officers performed an ION hand scan, which tests for handling CDS, on the inmates, who were brought forward two by two. (*Id.* ¶¶ 8–9). According to the shift commander's report, 325 scans were conducted. (*Id.* ¶ 10). Twenty-two inmates tested positive for handling drugs, including Plaintiff. (*Id.*). Plaintiff alleges in his Amended Complaint that "I along with about 26 other prisoners were given a random hand scan by SID defendant investigator Santiago as part of our employment" and that Santiago told him he tested positive for an illegal substance. (Am. Compl. ¶ 1). However, after Nogan, the Administrator of EJSP (D.E. No. 60-9, Ex. E to Decl. of Counsel ("Nogan Resp. to Pl.'s First Set

---

[1]    The Court gathers the following from the facts in the Amended Complaint and Defendants' Statement of Undisputed Material Facts (D.E. No. 60-1 ("SUMF")). *See* L. Civ. R. 56.1(a) (providing that "any material fact not disputed shall be deemed undisputed for the purposes of the summary judgment motion").

of Interrogatories") ¶ 2), allegedly also tested positive on the hand scan, "the administration realized the hand scan was flawed and they stopped taking prisoners' jobs and moving them when they fail the hand scan pending the results of the urine test." (Am. Compl. ¶ 11).

The inmates who tested positive on the hand scans were then given urine analyses. (SUMF ¶ 12; Am. Compl. ¶ 3). Six inmates tested positive, but Plaintiff's urine analysis was negative. (SUMF ¶¶ 12–13; Am. Compl. ¶ 3). It is common for an inmate to test positive on an ION hand scan and negative on a urine analysis because the hand scan indicates the handling of drugs while the urine test shows ingestion. (SUMF ¶ 15). Plaintiff had not completed any substance abuse treatment before he was tested on September 13, 2017. (*Id.* ¶ 16).

Later that day, Plaintiff and other inmates who tested positive on the ION hand scan were moved to new cells in 3-Wing. (*Id.* ¶ 17; Am. Compl. ¶ 4). Plaintiff and the other inmates also lost their jobs. (SUMF ¶ 18; Am. Compl. ¶ 4). According to Plaintiff, he suffered mental anguish because he was treated like he did something wrong. (SUMF ¶ 19).

Plaintiff alleges that, upon request, several other prisoners who had passed their urine tests were given their jobs back a few months later. (Am. Compl. ¶ 5). Like the other inmates, he allegedly wrote numerous inquiries and grievances asking Nogan and other officials for his job back and to be moved back to the kitchen unit, but his requests were denied. (*Id.* ¶¶ 7–10).

Plaintiff claims that, on or about September 20, 2017, he asked Jones (a major) about getting his kitchen detail job back, but "he told me I am beat." (*Id.* ¶ 6). At his deposition, Plaintiff explained that, on September 14, 2017, he spoke with Jones for about two minutes about his kitchen job. (SUMF ¶ 21). On the same day, Plaintiff filed an inquiry to the Department of Corrections ("DOC") Administration, addressed to Nogan, concerning the September 13, 2017 incident with the ION hand scan. (*Id.* ¶ 27). Jeffrey Crothers responded to his inquiry on October

3

12, 2017, and stated that Plaintiff may request a job and wing change ninety days after the incident. (*Id.*).

Because the positive ION hand scan indicated his participation in drug distribution while on the job, Plaintiff was not permitted to return to his job on the kitchen detail. (*Id.* ¶ 28). Typically, a principal investigator, a major, and Nogan would make a consensus decision to deny a request to return to a job following termination. (*Id.* ¶ 29). Plaintiff stated that some other inmates who tested positive on the hand scan got other jobs and moved to another tier and that "[a] lot of them" did not return to the kitchen. (*Id.* ¶ 30 (citing D.E. No. 60-6, Ex. B to Decl. of Counsel ("Pl. Dep."), at 40:12–21)). He also admitted that he was unaware of the circumstances of those inmates who did return to work in the kitchen. (*Id.*).

Plaintiff submitted a grievance to the Central Office on September 15, 2017, asking for his job on the kitchen detail back and a transfer to his prior housing wing assignment. (*Id.* ¶ 31). On September 17, 2017, Plaintiff received a response notifying him that he did not follow the proper procedure and that he had to exhaust the matter at the institutional level prior to filing a Central Office grievance. (*Id.*).

On September 25, 2017, Plaintiff filed an inquiry to Food Services, asking how long it would be until he got his kitchen detail job back. (*Id.* ¶ 32). A response dated September 28, 2017, stated that the inquiry should be directed to either Custody or Administration. (*Id.*). Plaintiff filed another Central Office grievance on September 29, 2017. (*Id.* ¶ 33). He claimed that a response to his September 15, 2017 inquiry was overdue. (*Id.*). He noted that other inmates were told to re-apply in ninety days, and he asked why if they did not have any infractions. (*Id.*) He stated that he would like his kitchen detail job back, he had no infractions, and he wanted to be treated fairly. (*Id.*). On October 12, 2017, Plaintiff was again told that he did not follow the proper procedure

4

and needed to exhaust the matter with the institution before raising a grievance to the Central Office. (*Id.*).

On October 2, 2017, Plaintiff submitted an inquiry to Custody. (*Id.* ¶ 34). He indicated that other inmates were told to put in requests in ninety days or that they would be moved back, and he asked what steps were being taken to resolve his issue and why the urine screening did not resolve the situation. (*Id.*). A response dated October 16, 2017, stated that his cell assignment could be changed for several reasons and that his housing assignment was administratively changed for institutional needs. (*Id.*). He was told that, after ninety days on the current housing assignment, he would be eligible to request a wing change. (*Id.*).

Plaintiff filed an inquiry with the Office of Substance Abuse on December 5, 2017, in which Plaintiff indicated that he was ready to address his substance abuse habit and lifetime exposure to drugs and alcohol. (*Id.* ¶ 35). On December 8, 2017, the Office of Substance Abuse responded indicating Plaintiff's referral to a substance abuse treatment program. (*Id.*). On December 19, 2017, Plaintiff's name was added to the forty-second spot on the kitchen waitlist for a Food Services position, effective December 25, 2017. (*Id.* ¶ 36). Plaintiff filed an inquiry with Food Services on December 23, 2017, stating that he was put on "the kitchen waitlist" even though he never put in for the kitchen. (*Id.* ¶ 37). He asked to be removed from the waitlist. (*Id.*). On January 5, 2018, he was informed that his name would be removed from the "Food Services," or "kitchen detail," waitlist. (*Id.*). On January 9, 2018, Plaintiff's name was taken off the Food Services waitlist, effective January 15, 2018. (*Id.* ¶ 39). He resumed working on the kitchen detail in December 2020. (*Id.* ¶ 40).

**B.     Procedural History**

Plaintiff filed a complaint in the New Jersey Superior Court raising claims under 42 U.S.C.

§ 1983 that Defendants improperly required him to undergo a drug test, faked a positive result, and removed Plaintiff from his prison job. (D.E. No. 1-1). Defendants removed this matter to this Court. (D.E. No. 1). After the removal, Plaintiff filed the Amended Complaint. (D.E. No. 6 ("Am. Compl.")). In his Amended Complaint, Plaintiff asserts a Fourteenth Amendment due process claim for removing him from his prison job without notice and a hearing; a Fourteenth Amendment equal protection claim for giving other similarly situated inmates their jobs back but refusing to allow him to return to his prison job; and a Fourteenth Amendment due process claim for denying his state liberty interest in not losing his prison job. (Am. Compl. at 4).

Defendants filed a motion to dismiss, and Plaintiff submitted a letter opposing their motion. (D.E. Nos. 7 & 11). On October 30, 2019, the Court granted Defendants' motion to dismiss as to Plaintiff's Fourteenth Amendment due process claims and claims against Defendants in their official capacities and denied their motion as to his equal protection "class of one" claim. (D.E. No. 13). In its accompanying memorandum opinion, the Court explained that the motion was denied in part because of Defendants' failure to address Plaintiff's claim that his equal protection rights were violated under a "class of one" theory of liability. *Williams v. Nogan*, No. 18-17321, 2019 WL 5617022, at *2 (D.N.J. Oct. 30, 2019).

Counsel retained by Plaintiff entered her appearance on August 11, 2020. (D.E. No. 17). Subsequently, Plaintiff's counsel moved to withdraw due to irreconcilable differences, and both Plaintiff and Defendants' counsel consented to her withdrawal. (D.E. No. 25). After conducting a status conference on April 26, 2021, at which Plaintiff appeared, the Honorable Cathy L. Waldor, U.S.M.J., granted Plaintiff's former counsel's motion to withdraw. (D.E. Nos. 30–31). Plaintiff is now proceeding in this matter *pro se*.

On August 22, 2023, Defendants filed their summary judgment motion. (D.E. No. 60). On

January 19, 2024, the Court entered a text order noting that Plaintiff had failed to submit any opposition to Defendants' Motion within the time specified by the Local Civil Rules. (D.E. No. 64 ("January 19, 2024 Order")). Given his *pro se* status, Plaintiff was provided an additional opportunity to respond to the Motion within thirty days of the date of entry of the January 19, 2024 Order. (*Id.*). The Court gave notice that, should Plaintiff choose not to submit any opposition, it may consider Defendants SUMF, if properly supported, as undisputed for purposes of the motion and/or grant summary judgment in favor of Defendants if the Motion and supporting materials, including the facts considered undisputed, show that Defendants are entitled to summary judgment. (*Id.*). The Motion was administratively terminated for docket management purposes pending Plaintiff's response. (*Id.*). On July 11, 2024, the Court entered another text order directing the Clerk of the Court to reinstate the motion for summary judgment because Plaintiff failed to respond to the January 19, 2024 Order within the prescribed time. (D.E. No. 65).

## II.  LEGAL STANDARD

A court should grant summary judgment if the evidence in the record demonstrates that there is no genuine issue of material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986); *Brooks v. Kyler*, 204 F.3d 102, 105 n.5 (3d Cir. 2000); *Todaro v. Bowman*, 872 F.2d 43, 46 (3d Cir. 1989). An issue is "genuine" only if a reasonable jury could possibly find in the non-movant's favor on that issue. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A fact is "material" only if it influences the outcome under the applicable law. *Id.* at 248.

The moving party bears the initial burden of informing the district court of the basis for its motion and demonstrating either (i) that there is no genuine issue of fact and that as a matter of law, the moving party must prevail, or (ii) that the non-moving party has not shown facts relating

7

to an essential element of the issue for which he bears the burden. *Celotex*, 477 U.S. at 323, 331. Once either showing is made, the burden shifts to the non-moving party, who must demonstrate facts which support each element for which he bears the burden and establish the existence of genuine issues of material fact. *Id.* To satisfy this burden, the non-moving party "may not rest upon the mere allegations or denials of his pleading," Fed. R. Civ. P. 56(e), and he "must do more than simply show that there is some metaphysical doubt as to the material facts." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992). The non-moving party must go beyond the pleadings and point to specific factual evidence showing there is a genuine material issue for trial. *See Celotex*, 477 U.S. at 323–24. This is a rigorous burden for the non-movant: he must "point to concrete evidence in the record that supports each and every essential element of his case." *Orsatti v. N.J. State Police*, 71 F.3d 480, 484 (3d Cir. 1995). Speculation and conjecture will not suffice. *See Jackson v. Danberg*, 594 F.3d 210, 227 (3d Cir. 2010). The Court must consider all facts and their reasonable inferences in the light most favorable to the non-moving party, *see Drumgo v. Kuschel*, 684 F. App'x 228, 230 (3d Cir. 2017).

Where, as here, the motion for summary judgment is unopposed, the Court may grant summary judgment so long as the motion and the supporting materials "show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3); *Houston v. Twp. of Randolph*, 934 F. Supp. 2d 711, 723 (D.N.J. 2013). However, the Court must still analyze the unopposed motion under the standard of Rule 56. *Houston*, 934 F. Supp. 2d at 723. Under Local Civil Rule 56.1(a), "any material fact not disputed shall be deemed undisputed for purposes of the summary judgment motion."

### III.   DISCUSSION

Defendants argue that they are entitled to summary judgment on Plaintiff's remaining "class of one" claim under the Equal Protection Clause of the Fourteenth Amendment because

8

Plaintiff failed to: (i) exhaust his administrative remedies before filing suit; (ii) adduce evidence of an equal protection violation; or (iii) demonstrate their personal involvement in the alleged constitutional deprivation. (Mov. Br. at 5–21). Defendants also argue that they are entitled to qualified immunity and ask the Court to grant summary judgment in their favor on this basis as to Plaintiff's claims for compensatory and punitive damages. (*Id.* at 21–31). For the following reasons, the Court agrees with Defendants that Plaintiff has failed to present concrete evidence supporting the elements of a "class of one" claim. (*See id.* at 10–18); *Orsatti*, 71 F.3d at 484. Because it concludes that a reasonable jury could not find that Plaintiff has satisfied the elements of his claim, the Court need not—and does not—consider the merits of the other arguments that Defendants present in favor of their Motion.

! Where a plaintiff does not allege membership to a particular class or group, the plaintiff can advance a "class of one" theory of equal protection. *See Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). To advance such a theory, a plaintiff must show that: "(1) the defendant[s] treated him differently from others similarly situated, (2) the defendant[s] did so intentionally, and (3) there was no rational basis for the difference in treatment." *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006). To be "similarly situated," parties must be "alike in all relevant aspects." *Perino v. Twp. of Tilden*, 423 F. App'x 234, 238 (3d Cir. 2011) (citing *Startzell v. City of Philadelphia*, 533 F.3d 183, 203 (3d Cir. 2008)); *see also Mosca v. Cole*, 217 F. App'x 158, 164 (3d Cir. 2007) (affirming a grant of judgment for the defendant on a "class of one" claim where the plaintiff failed to identify a similarly situated individual who was treated differently).

Thus, Plaintiff must point to other inmates who were like him in all relevant respects. He has failed to meet this requirement. In his Amended Complaint, he claims that "about 26 other prisoners were given a random hand scan" and "[u]pon request, several other prisoners, who had

9

[tested positive for CDS on the hand scan and] also passed their urines, were given their jobs back a few months later." (Am. Compl. ¶¶ 1 & 5). However, he acknowledged at his deposition that some inmates who tested positive did not work on the kitchen detail and resided in different wings, and, as to the inmates who did return to work, some kitchen detail workers were moved to other jobs and tiers. (SUMF ¶ 30). Additionally, there was an open federal detainer/charge against Plaintiff related to CDS. (Inmate Progress Notes Rep. at 005). Plaintiff had also failed to complete any substance abuse treatment at the time of the incident. (SUMF ¶ 15). Plaintiff has not adduced evidence indicating whether the other inmates who allegedly went back to work also had an open detainer or charges related to drug offenses, had failed to complete substance abuse treatment, or whether there were other specific reasons (besides a positive ION hand scan) indicating that they could be using or distributing drugs. At his deposition, Plaintiff admitted that he did not know the circumstances of the inmates who returned to work in the kitchen. (*Id.* ¶ 30).

Plaintiff has also failed to present facts or evidence indicating that he is similarly situated to other inmates with respect to any requests they may have made to return to work. In his Amended Complaint, he claims that the other prisoners were given their jobs back upon request but that, when he asked Jones for his kitchen detail job back, he told him "I am beat;" he then asked Nogan to be allowed to return to his job, but his request was denied, with Nogan saying this decision was final; and he requested his job back and filed grievances "numerous times" requesting the same, which were all denied. (Am. Compl. ¶¶ 5–6, 8 & 10). But there is no indication in either the Amended Complaint or the record evidence as to what steps were taken by the other inmates to get their prison jobs back. In fact, Plaintiff was informed that several of his grievances and inquiries were not properly filed and that he may request a job and wing change ninety days after the incident. (SUMF ¶¶ 27, 31–34 & 37). Instead of requesting a job and wing change after ninety

10

days, Plaintiff asked to be removed from the kitchen detail waitlist. (*Id.* ¶ 37). Plaintiff does not allege or present evidence that any similarly situated inmate also asked to be taken off the waitlist.

Plaintiff has also failed to show through record evidence that a reasonable jury could find that Plaintiff was intentionally treated differently than other inmates. He admitted that some other inmates with positive ION hand scans were reassigned to other jobs and moved to other tiers and that many of them did not return to the kitchen. (*Id.* ¶ 30). Likewise, he did not know the circumstances of those individuals who did return to the kitchen. (*Id.*); *see also Margetta v. Ferguson*, No. 17-0037, 2018 WL 1430936, at *4 (M.D. Pa. Mar. 22, 2018) (dismissing "class of one" claim because plaintiff who lost his job in the prison library acknowledged that some of the other library workers also lost their jobs while others did not).

Finally, Plaintiff fails to present sufficient evidence showing that Defendants lacked a rational basis for his treatment. Plaintiff tested positive for CDS on the ION hand scan. (SUMF ¶¶ 10 & 28). Additionally, there was an outstanding CDS-related detainer/charge against him, and Plaintiff had failed to complete a substance abuse treatment program. (*Id.* ¶ 15; Inmate Progress Notes Rep. at 005). While his urine screening was negative, it is common for a urine analysis, which tests for ingestion, to be negative even though the hand scan was positive because the ION hand scan indicates that the individual handled drugs. (SUMF ¶¶ 13–15). Plaintiff alleges that the administration realized the ION hand scan was flawed after Nogan tested positive with it, and they subsequently stopped using it to take away prisoners' jobs and transfer them pending the results of the urine test. (Am. Compl. ¶ 11). However, at summary judgment, the non-moving party "may not rest upon the mere allegations or denials of his pleading," Fed. R. Civ. P. 56(e), and Plaintiff has not pointed to any specific evidence supporting his allegations regarding the alleged flaws in the ION hand scans, *see Celotex*, 477 U.S. at 323–24.

Because Plaintiff has failed to raise a genuine issue of material fact with respect to any element of his remaining "class of one" claim, the Court grants summary judgment in favor of Defendants.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' unopposed motion for summary judgment (D.E. No. 60) is **GRANTED**.  An appropriate Order follows.


**Dated: January 31, 2025**                                                  *s/ Esther Salas*
                                                                             **Esther Salas, U.S.D.J.**